## PESANT v. METROPOLITAN ST. RY. CO.

(Supreme Court, Appellate Division, First Department. July 13, 1904.)

1. STREET RAILWAYS — PERSONAL INJURIES — EXCESSIVE DAMAGES — SETTING ASIDE VERDICT.

In an action against a street railway company for personal injuries, the evidence was sufficient to show negligence of defendant; and it appeared that after the injury plaintiff was almost wholly disabled, and had a hacking cough, and chronic inflammation of the spleen, kidney, and other organs, and paralysis of the throat. Three physicians testified for defendant that they had examined plaintiff, and found slight wounds, and that his condition had grown much worse at the time of trial, but attributed this to consumption, which they stated was a germ disease, and also testified that they found no injury to plaintiff's lungs when the accident occurred, and that the injuries they found would not produce consumption. A verdict for plaintiff awarded him $6,000 damages, and, on motion to set it aside, the court stated he would entertain the motion as

to excessive damages, and afterward set the verdict aside; stating that the evidence showed almost conclusively that plaintiff had tuberculosis, which could not be produced by the injury; that it was clear that the verdict must be based on the theory that plaintiff's condition at the time of trial was due to the injuries, and was against the weight of the evidence. *Held*, that it was error to set the verdict aside; the verdict being merely excessive, and not showing that it was the result of a disregard of the evidence, or of instructions that plaintiff could not recover for injuries from tuberculosis.

Appeal from Trial Term, New York County.

Action by Harry Pesant against the Metropolitan Street Railway Company. From an order granting a motion to set aside a verdict for plaintiff, he appealed. Plaintiff died pending appeal, and Margaret Pesant, as administratrix de bonis non, was substituted. Conditionally reversed.

This action was brought by Harry Pesant to recover for personal injuries which he sustained through the alleged negligence of the defendant, whereby he was thrown from the seat of a truck while he was driving easterly across Sixth avenue at Forty-Fifth street. The jury returned a verdict in his favor· for $6,000, but, defendant having. moved to set aside the verdict, an order was so entered, from which an appeal was taken. Thereafter, upon the death of Harry Pesant, an order was entered substituting his widow, as administratrix de bonis non, as plaintiff.

The uncontradicted evidence given upon the trial discloses that the deceased was driving a large truck, which, with the pole, was 24 feet long, and, when at the westerly· side of Sixth avenue, he looked, and saw a north-bound car then some 100 feet away, and continued driving at a walk or jog trot across the avenue; that he crossed the westerly tracks, and then observed that the car was 50 feet away, and looked forward to see that there were no pedestrians in the way, and then, when his horses were across the track, the car crashed into his truck at or about the middle of the front wheels, split the truck, and jammed it up against an elevated railway pillar 5 feet away, the top of the truck being on top of the car, and the car jumping the track and not stopping till it had gone some 18 feet; no warning of its approach having been given. The driver was thrown to the ground and rendered unconscious. He was treated by an ambulance surgeon, driven to his house in a cab, and confined to his bed for two or three weeks, and to his house three or four more. For six weeks he could not walk, and then, at the end of eight weeks, went to the store of his employers, but was unable to do his former work of lifting and driving, and worked but little; doing practically nothing after the accident, and suffering continuous pain. Prior thereto he had been employed for 16 years, and never lost a day through sickness. His ankle was knocked out of joint, and his back injured. He suffered severe shock, and was hysterical and nervous. He was in a neurasthenic state, and, in addition, was generally bruised and wounded. A hacking cough soon began. There was chronic inflammation of the spleen, kidney, and other organs, and a paralysis of the throat. His physicians attributed his condition to the accident, and that condition was considered by them permanent. He received from his employer a salary after his return to work of $12, instead of $15, a week, and was employed on light work, such as he could perform. "He was simply on the pay roll."

The testimony of the injured man as to the manner in which the accident occurred was corroborated by four witnesses in various particulars; they testifying that the car was going at an unusually rapid rate; that the horses and front wheels of the truck were clear of the track; that the collision was violent, no warning having been heard; and that several passengers in the car were injured. The conductor was the defendant's only·witness as to the happening of the accident; his testimony being that he felt the car slacken, and then crash into the truck, which was thus wedged against the post; that he got a few names; that the motorman was John Murphy; that the injured

man was standing in the street beside the car when he first saw him. A process server testified that he could not find "John Smith, motorman," and that the names given as witnesses were all false. Three physicians testified for defendant that they examined the man, and found slight wounds, and saw that his condition had grown much worse at the time of the trial, but did not think this due to the injuries he received, but attributed it to consumption, which is a germ disease; that they had found no injury to his lungs when the accident occurred, and the injuries they found would not produce consumption; that there is no question but he had tuberculosis at the trial; and that this is a germ disease, and is never caused by external violence.

In charging the jury, the court said: "If you find that he is now suffering or has been suffering from tuberculosis, the defendant, under the evidence in the case, is not responsible therefor, because the evidence is undisputed, and it is not claimed by the plaintiff that tuberculosis would produce the condition which he has now, because it is admitted that tuberculosis is a germ disease, and it is a fact testified to that it never comes from traumatic injury, or injury which is induced by violence." And he further charged that, "if you find that the present condition of the plaintiff is tuberculosis, then, of course, under the evidence in the case, that cannot be considered the result of the injury which was received at the time of the accident. If, however, you find that he was suffering from some other trouble which is not tuberculosis, but which is the direct result of the injury which was received at the time of the accident, he is entitled to such sum as you may find * * * will properly compensate him." After a verdict was rendered for $6,000 in plaintiff's favor, a motion was made to set it aside upon all the grounds stated in section 999 of the Code of Civil Procedure, and the court said: "I will entertain a motion as to excessive damages." Argument was heard on that motion, and thereafter the court granted the motion to set aside the verdict, saying: "The evidence shows almost conclusively that the plaintiff is now suffering from tuberculosis. There is no claim made that tuberculosis could be produced by the injury, and the uncontradicted evidence, as it stands, is that tuberculosis cannot be produced by such injuries, but is a germ disease. It is quite clear that the jury must have based their verdict upon the statement that plaintiff's present condition is due to injuries received at the time of the accident, and such result, to my mind, is clearly against the weight of evidence." From the order thus entered, this appeal is taken.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, PATTERSON, and O'BRIEN, JJ.

Daniel Daly, for appellant.
Charles F. Brown, for respondent.

O'BRIEN, J. The jury having found, upon satisfactory evidence, that the defendant was negligent, the plaintiff was entitled to recover his damages, which would include his pain and suffering, impairment of his general health, and such injuries as were both temporary and permanent. With respect to the latter, there were two theories which were fairly fought out upon the trial—one, advanced by the plaintiff, that his impaired health and physical condition, which were conceded, were due directly to the accident; and the other, advanced by the defendant, that the plaintiff at the time of the trial was suffering from tuberculosis, which, being a germ disease, could not be regarded as a direct result of the accident. The court fully protected the defendant; in effect stating to the jury in the course of the charge that, if they found that the plaintiff was suffering at the time of the trial from tuberculosis, he could not for that disease recover anything of the defendant. The learned trial judge, in setting aside the verdict, did so, as appears from his opinion, upon the ground that the preponderance of

evidence made it reasonably certain that the plaintiff at the time of the trial was suffering from tuberculosis, and that therefore the verdict should not stand. The error into which we think he has fallen in this disposition is in assuming that the jury disregarded his instructions, or went contrary to the weight of the evidence, and rendered their verdict after having reached the conclusion that the plaintiff at the time of the trial was not suffering from tuberculosis. We can find nothing in this record, nor in the form of the verdict, which would justify such assumption. The verdict, it is true, is excessive; but this may well have been due, not to the character of the plaintiff's injuries, but to the feeling which might naturally have been aroused in the minds of the jury from the gross negligence on the part of the motorman which led to the infliction of what must be regarded as serious injuries upon the plaintiff, and from which he showed himself to be entitled to compensation. This, it seems probable, was the view entertained by the learned trial judge on receipt of the verdict, because, on the motion to set it aside on all the grounds mentioned in section 999 of the Code of Civil Procedure, he, in effect, denied the motion as to all of them by his statement that he would consider it upon the ground of excessive damages. Instead, however, of determining this question, which was the one to which counsel were thus called upon naturally to direct their attention, he concluded some time after the trial, and after further deliberation, that the verdict was contrary to the law and to the evidence; and this, as we have endeavored to point out, was, as shown by his opinion to which we have referred, based upon a misapprehension of the way in which the question whether the plaintiff's condition at the time of the trial was or was not the direct result of the accident was presented to the jury.

We think, on an examination of the proceedings upon the trial, that the case was fairly tried, and that the plaintiff was entitled to have the verdict of the jury in his favor stand, but we think that the verdict was excessive in amount. This, however, the trial judge could have corrected by compelling the plaintiff to reduce the amount. We think that the verdict can be legally supported to the extent of $3,000. Therefore, upon the plaintiff stipulating to reduce the verdict to that amount, the order appealed from should be reversed, without costs, and the verdict reinstated to the extent of $3,000; but, upon the refusal of the plaintiff so to stipulate, the order setting aside the verdict should be affirmed, with costs. All concur.